IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>PLAINTIFFS,<br>v.<br>ZUFFA, LLC, TKO OPERATING COMPANY, LLC f/k/a ZUFFA PARENT LLC (d/b/a ULTIMATE FIGHTING CHAMPIONSHIP and UFC), and ENDEAVOR GROUP HOLDINGS, INC.,<br>DEFENDANTS. | No.: 2:21-cv-01189-RFB-BNW<br><br>**[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| Mikhail Cirkunovs, on behalf of himself and all others similarly situated,<br>Plaintiff,<br>v.<br>Zuffa LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc.,<br>Defendants. | No.: 2:25-cv-914-RFB-BNW |
| Phil Davis, on behalf of himself and all others similarly situated,<br>Plaintiff,<br>v.<br>Zuffa LLC, TKO Group Holdings, Inc. (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc.,<br>Defendants. | No.: 2:25-cv-00946-RFB-BNW |

1. **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in the above-captioned case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules. Nothing in this Order is intended to expand or limit the obligations or protections under the Federal Rules of Civil Procedure.

2. **COOPERATION**

Plaintiffs Kajan Johnson, Clarence Dollaway, Tristan Connelly, Mikhail Cirkunovs, and Phil Davis ("Plaintiffs") and Defendants Zuffa, LLC ("Zuffa"), TKO Group Holdings, Inc. and TKO Operating Company, LLC ("TKO") and Endeavor Group Holdings, Inc. ("Endeavor," together with Zuffa and TKO, "Defendants," and Defendants collectively with Plaintiffs: the "Parties"), acknowledge their duty to work together cooperatively throughout the discovery process.

3. **SCOPE OF DISCOVERY AND PRESERVATION**

This Order does not define the scope of production, nor the relevance of any particular information. Nothing in this Order establishes any agreement as to either the temporal or subject matter scope of discovery in this Action. The scope of discovery is co-extensive with that provided under Fed. R. Civ. P. 26.

The Parties agree that potentially relevant ESI must be, and will continue to be, preserved in a reasonable and proportionate manner. The Parties further agree that:

a) Subject to exceptions enumerated below in paragraph (b), the Parties have taken reasonable and good-faith steps to preserve potentially relevant ESI consistent with their legal obligations and applicable Orders of the Court.

b) The Parties will meet and confer regarding any issues involving preservation, including about sources of potentially relevant ESI that are not reasonably accessible because of undue burden or cost. To the extent Plaintiffs or Defendants identify potentially relevant ESI that is not reasonably accessible, the Parties agree that they are not required to preserve, search, review, or produce such ESI, provided that the party that has identified what it reasonably believes to constitute such ESI provides

reasonable notice to the opposing party. The Parties shall meet and confer following such notice. Upon agreement by the Parties or a Court order, the party in possession of ESI that is not reasonably accessible shall not be required to preserve, search, review, or produce such ESI. The Parties have agreed that the following sources of data may not be reasonably accessible and have agreed that they need not preserve, search, review, or produce the following:

    i. Backup media, backup tapes, or other long-term storage media that were created strictly for use as a data back-up or disaster recovery medium provided, however, that all such data shall be preserved if the data cannot be accessed in any other way than the backup media;

    ii. Automatically saved versions of documents and temporary data stored in random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the operating system;

    iii. Data only accessible by advanced forensic analysis, including deleted, slack, fragmented data;

    iv. Temporary Internet files, history, cache, and cookies;

    v. Voicemail messages received after the date of entry of this [Proposed] Stipulated Order; and

    vi. Logs of communications made from mobile devices that were created after the date of entry of this [Proposed] Stipulated Order.

Each party reserves the right to identify regarding additional categories of data that are not reasonably accessible as the Action progresses. The parties will meet and confer regarding such additional categories of data.

**4.  PROCESSES AND TECHNOLOGIES**

The Parties agree that each Producing Party will take reasonable steps to identify, review, and produce relevant Documents.

The Parties will meet and confer about methods to search, cull, and identify potentially responsive ESI, including identification of custodians and use of filtering search terms to identify ESI that is potentially responsive to the Parties' discovery requests. No Producing Party (including third parties making productions pursuant to subpoenas) shall use any computer-assisted and/or linguist-assisted review (collectively, "Technology-Assisted Review" or "TAR") to identify ESI that is potentially responsive to discovery requests or to filter out ESI

3

that is not subject to discovery without first meeting and conferring with the Requesting Party. Prior to using any such TAR processes, the Requesting Party and Producing Party shall exchange specific information on the technology to be used and shall develop a validation protocol. If the Requesting Party and the Producing Party cannot agree to a validation protocol, they will submit their dispute to the Court before using any TAR processes.

While this Discovery Plan is intended to address the majority of Documents and data sources handled in this matter, there may be situations where the Parties come into contact with more complex, non-traditional or legacy data sources, such as ESI from social media, ephemeral messaging systems, collaboration tools, mobile device apps, and modern cloud sources.  In the event such data sources are relevant, the Parties agree to take reasonable efforts to appropriately address the complexities introduced by such ESI, including, when appropriate, to meet and confer regarding relevant production format.

**5.    DE-DUPLICATION AND DE-NISTING**

The Parties agree to de-duplicate ESI across custodians. Each Party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for the purposes of production unless the parent email and all attachments are also duplicates.  The Parties may de-NIST ESI using the current list of system files maintained by the National Software Reference Library.

**6.    PRODUCTION FORMATS**

The Parties generally agree to produce responsive, non-privileged documents in TIFF and native formats with load files, with specifications for production formats and production of metadata set forth in Exhibit A to this [Proposed] Stipulated Order. The Parties agree not to degrade the searchability of documents as part of the document production process.

The Parties will meet and confer to determine whether responsive and non-privileged discoverable documents previously produced to the Federal Trade Commission or any other government agency can be deemed compliant with the production protocol.

Plaintiffs believe that discovery in this litigation will likely include the production of text messages and/or instant messages or chats (e.g., Slack, WhatsApp, and other messaging apps and platforms), just as it did in *Le v. Zuffa, LLC*, No. 15-cv-1045 (D. Nev.). The Parties agree to meet and confer in good faith to identify the appropriate search processes and production formats for these materials.

**7. MODIFICATION**

This [Proposed] Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record:

Dated: August 26, 2025        By:    /s/ *Eric L. Cramer*

Eric L. Cramer (*Pro Hac Vice*)
Michael C. Dell'Angelo (*Pro Hac Vice*)
Patrick F. Madden (*Pro Hac Vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

Joshua P. Davis (*Pro Hac Vice*)
Kyla Gibboney (*Pro Hac Vice*)
Robert C. Maysey (*Pro Hac Vice*)
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Phone: (415) 215-0962
jdavis@bm.net
kgibboney@bm.net
rmaysey@bm.net

*Counsel for Plaintiffs and the Proposed Classes*

Joseph R. Saveri (*Pro Hac Vice*)
Christopher Young (*Pro Hac Vice*)
Kevin E. Rayhill (*Pro Hac Vice*)
Itak Moradi (*Pro Hac Vice*)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Phone: (415) 500-6800/Fax: (415) 395-9940
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
jchen@saverilawfirm.com
krayhill@saverilawfirm.com
imoradi@saverilawfirm.com

Benjamin D. Brown (*Pro Hac Vice*)
Richard A. Koffman (*Pro Hac Vice*)
Daniel H. Silverman (*Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500
Washington, DC 20005
Phone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

W. Joseph Bruckner (*pro hac vice* forthcoming)
Brian D. Clark (*pro hac vice* forthcoming)
Consuela Abotsi-Kowu (*pro hac vice* forthcoming)
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4001
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
cmabotsi-kowu@locklaw.com

*Additional Counsel for Plaintiffs and the Proposed Classes*

Michael J. Gayan
CLAGGET & SYKES
4101 Meadows Lane, Ste. 100
Las Vegas, NV 89107
Telephone: (702) 333-7777
Fax: (702) 655-3763

*Liaison Counsel for Plaintiffs and the Proposed Classes*

| | | |
|---|---|---|
| Dated: August 26, 2025 | By: | /s/ *Christopher S. Yates* |

CHRISTOPHER S. YATES (*pro hac vice*)
(chris.yates@lw.com)
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8157; Fax: (415) 395-8095

WILLIAM A. ISAACSON (*pro hac vice*)
wisaacson@DIRLLP.com
JESSICA PHILLIPS (*pro hac vice*)
jphillips@DIRLLP.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004

LAURA R. WASHINGTON (*pro hac vice*)
(laura.washington@lw.com)
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Tel: (424) 653-5500

SEAN M. BERKOWITZ (*pro hac vice*)
(sean.berkowitz@lw.com)
LATHAM & WATKINS
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700

DAVID L. JOHNSON (*pro hac vice*)
(david.johnson@lw.com)
LATHAM & WATKINS
555 Eleventh Street, N.W., Suite 1000
Washington, D.C., 20004
Tel: (202) 637-2200

DONALD J. CAMPBELL #1216
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS #5549
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street, Las Vegas, NV 89101
Telephone: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendants Zuffa, LLC (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc.*

This Court GRANTS the proposed Stipulated Order re Discovery of Electronically Stored Information in 2:21-cv-01189-RFB-BNW (ECF No. 235), 2:25-cv-914-RFB-BNW (ECF No. 41), and 2:25-cv-00946-RFB-BNW (ECF No. 43). **IT IS SO ORDERED.**

_____
UNITED STATES MAGISTRATE JUDGE
DATED:   August 27, 2025

**ATTESTATION OF FILER**

The signatories to this document are myself and Eric Cramer, and I have obtained Mr. Cramer's concurrence to file this document on our joint behalf.

Dated:  August 26, 2025            /s/ *Christopher S. Yates*
CHRISTOPHER S. YATES (*pro hac vice*)
(chris.yates@lw.com)
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8157; Fax: (415) 395-8095

# EXHIBIT A – PRODUCTION FORMAT REQUESTS

Responsive, non-privileged documents and ESI shall be produced as follows:

**A. Production Format**

    **1. Native Productions**

        a)    Except as specified in this section, all documents may be produced in TIFF format.

        b)    All spreadsheet files (e.g., Excel), presentation files (e.g., PowerPoint), and audio and video files shall be produced in native format to the extent possible. Additionally, any other file types that cannot be converted to TIFF will be produced in native format.

        c)    "Native" files refer to electronic files in the same format in which they were originally collected from custodians or other sources. Native file productions shall include metadata as set forth in Section B and a single page TIFF image indicating that the associated file was produced in native form. Each produced native file shall be named with a unique Bates Number (e.g., ABC00000001.xls). If the file contains privileged or work product content, the producing party may TIFF the document to redact that content from the document before production and produce the redacted document in TIFF format. If an excel file needs to be redacted it may be redacted natively and the native redacted document produced.

        d)    To the extent that any such native files are used in any pretrial motion or proceeding, those files will be referred to by the Bates-number(s) assigned during processing.

    **2. TIFF Productions**

Defendants have indicated that they intend to make their document productions in TIFF format, with the exception of those document formats specified above. Plaintiffs may also use TIFF production. The standards below pertain to TIFF productions.

a) **TIFF Images.** Unless otherwise stated in this Production Protocol, each document shall be produced in Group IV Tagged Image File Format ("TIFF") regardless of whether such documents are stored by the Parties in the ordinary course of business in electronic or hard copy form. Each TIFF image file should be one page and should reflect how the source document would appear if printed to hard copy. All TIFF images shall be produced in a folder named "IMAGES", which shall contain sub-folders named "0001", "0002", etc. Each sub-folder shall contain no more than 3,000 images. Images from a single document shall not span multiple sub-folders.

b) **Load Files.** Document productions shall include Concordance-compatible Load Files, including a Concordance DAT file and an Opticon delimited file, that indicate document breaks of the TIFF images and additional fields as identified in Section B below. All Load and Cross-reference files shall be produced in a folder named "DATA".

c) **File Name.** Each document image file shall be named with the unique Bates Number of the page of the document in question followed by the file extension "TIF". File names should not be more than fifteen characters long or contain spaces or underscore symbols.

d) **Document Unitization.** If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

e) **Color.** Documents shall be produced as black and white TIFF images. Upon written request, a party shall produce color documents reasonably necessary to decipher the complete meaning, context, or content of the documents which were originally in color. The requesting party shall specify the requested documents by Bates Number range. Notwithstanding the foregoing, all presentation files (e.g., PowerPoint) shall be produced in native and in color without requiring written request. Production of color versions of documents pursuant to this section shall be

accomplished either by producing a native version, a pdf, or JPEG. The Parties shall meet and confer when requesting such color versions to identify the appropriate color production format.

**3. Searchable Text**

a) In addition to TIFF images and/or Native files, each production will include text files corresponding to the TIFF image or Native files described above.

b) **Hard Copy Documents.** Hard copy documents shall be scanned using Optical Character Recognition ("OCR") technology and searchable ASCII text (or Unicode text if the text is in a language requiring characters outside of the ASCII character set) files shall be produced. Each file shall be named with the unique Bates Number of the first page of the corresponding TIFF document followed by the extension "TXT".

c) **Extracted Text or Optical Character Recognition ("OCR") Text for TIFF Images and Native Files.** To the extent practicable, each individual document based on an electronic file shall be accompanied by one corresponding text file with text that is extracted from the electronic file, not generated as an OCR file from the TIFF image(s). The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a language requiring characters outside of the ASCII character set) and shall be named with the unique Bates Number of the first page of the corresponding TIFF document followed by the extension "TXT". Searchable text files corresponding to the TIFF image files for redacted Electronic Documents must include Extracted Text or OCR text only to the extent that it will not disclose redacted information. The production of relevant ESI in searchable, full text format is limited to those forms of ESI that have text (in other words, any non-text formats [e.g., .wav and .jpeg] would not produce any corresponding text files). All Extracted Text and OCR files shall be produced in a folder named "TEXT". The Concordance load file will contain a link to the extracted text or OCR text file if applicable. The

text should not be included in the Concordance .DAT load file.

4. **Databases.** Databases are not included in this Production Protocol, but will be the subject of meet-and-confers as needed.

B. **Metadata Fields**

The following corresponding metadata fields, to the extent applicable to a produced electronic document, will be included in a searchable fielded data file, regardless of the production format. No party will have any obligation to manually generate information to populate these fields. For more complex, non-traditional or legacy data sources, the Parties will meet and confer as necessary to discuss metadata production, as described in Section 4 of the ESI Stipulation:

- *BegDoc (Beginning Bates number)
- *EndDoc (Ending Bates number)
- *BegAttach (Begin Attachment(s) Bates number)
- *EndAttach (End Attachment(s) Bates number)
- *PgCount (Page Count)
- *Type ("P" for parent document; "C" for child document)
- Document File extension or application
- Parent Date (date sent for e-mails; latest chronologically saved date for electronic documents; MM/DD/YYYY format)
- Sent Date (e-mails only)
- Sent Time (e-mails only)
- Received Date (e-mails only)
- Received Time (e-mails only)
- Meeting Start Date
- Meeting Start Time
- Meeting End Date
- Meeting End Time
- Create Date
- Create Time
- Time Zone
- Author
- From
- Recipients (multiple entries separated by "; ")
- CC (multiple entries separated by "; ")
- BCC (multiple entries separated by "; ")
- Subject (for emails)—unless the subject has been redacted
- Title (for files)—unless the document title has been redacted
- *Custodian (Last Name, First Name)
- All Custodian (Last Name, First Name) (multiple entries separated by "; ")
- File Name
- File Size
- Modified Date
- Modified Time
- Accessed Date
- Accessed Time

13

[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION

- Message ID
- Conversation Index
- Importance
- Sensitivity
- File Path
- All File Path
- *Full Text File Location (the corresponding text file will contain re-OCR'd text if redactions were made)
- * Notation of Redaction presence (if applicable; designated with "Redacted")
- *Confidentiality Designation (if applicable)
- DocLink
- MD5 or SHA1 Hash

\* *If hard copy documents are produced, only these fields of information will be included in the load file.*

1. **Redactions.** For redacted electronic documents, metadata fields must be produced only to the extent such fields will not disclose redacted information.

2. **Redaction of Images.** If the Parties redact images on grounds of the attorney-client privilege or attorney work product doctrine, these redactions will be listed on a Privilege Log. In the event a document is redacted, the redaction will be marked by either a box that covers the protected text and/or the term "Redacted." The extracted text described above will not be delivered for that document, and in place of extracted text, OCR output will be delivered based on the redacted images, to the extent reasonably feasible. The Parties agree and understand that redaction requires that a document be produced in TIFF format.

3. **Parent/Child.** Parent-child relationships (the association between an attachment and its parent document) should be preserved and appropriately reflected in the metadata. Bates numbering of a parent document and any attachments shall be sequential such that a parent document has the lowest value Bates Number when compared to its attachment(s).

4. **Foreign Language Documents.** The Parties agree that the producing party shall not bear the cost of translating foreign language documents produced in this case. The requesting Parties shall bear the burden of any costs associated with the translation of foreign language documents.

**C. De-Duplication of Productions**

To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values) reside within a party's ESI data set, each Party may produce only a single copy of a responsive document. Exact duplicate shall mean bit-for-bit identicality of the document content. For exact duplicate documents, the Producing Party will produce the metadata described in Section B herein for the produced copy, as well as any such metadata that differs for the duplicate document(s). De-duplication shall be done at the document family level, such that where any exact duplicate documents have attachments, hash values must be identical for both the document-plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone.

The Parties may de-duplicate identical ESI vertically (i.e., by custodian) and horizontally (i.e., globally across custodians). If the Producing Party chooses to de-duplicate horizontally, the Producing Party shall populate the Custodian and All Custodian fields listed in Section B herein that identifies each custodian who had the produced document in his or her files.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing [Proposed] Stipulated Order Re: Discovery of Electronically Stored Information was served on August 26, 2025 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

Dated:  August 26, 2025

/s/ *Christopher S. Yates*
CHRISTOPHER S. YATES (*pro hac vice*)
(chris.yates@lw.com)
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8157; Fax: (415) 395-8095