1

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KAJAN JOHNSON, et al., | ) Case No. 2:21-cv-01189-RFB-BNW |
| | ) |
| MIKHAIL CIRKUNOVS, et al., | ) Case No. 2:25-cv-00914-RFB-BNW |
| | ) |
| PHIL DAVIS, et al., | ) Case No. 2:25-cv-00946-RFB-BNW |
| , | ) |
| | ) |
| Plaintiffs, | ) Las Vegas, Nevada |
| | ) Thursday, October 30, 2025 |
| vs. | ) 2:25 p.m. |
| | |
| ZUFFA, LLC; TKO OPERATING | STATUS CONFERENCE |
| COMPANY, LLC f/k/a Zuffa | |
| Parent, LLC (d/b/a Ultimate | **C E R T I F I E D   C O P Y** |
| Fighting Championship and | |
| UFC); and ENDEAVOR GROUP | |
| HOLDINGS, INC., | |
| | |
| Defendants. | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

THE HONORABLE RICHARD F. BOULWARE, II,
UNITED STATES DISTRICT JUDGE

APPEARANCES:        See Page 2 and 3

COURT REPORTER:     Patricia L. Ganci, RMR, CRR
                    United States District Court
                    333 Las Vegas Boulevard South, Room 1334
                    Las Vegas, Nevada  89101

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

2

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

APPEARANCES:

For the Plaintiffs:

**MICHAEL C. DELL'ANGELO, ESQ.**
**PATRICK F. MADDEN, ESQ.**
BERGER & MONTAGUE, P.C.
1818 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 875-3000

**DANIEL GIFFORD, ESQ.**
COHEN MILSTEIN SELLERS & TOLL, PLLC
88 Pine Street, 14th Floor
New York, New York 10005
(617) 877-0508

**BENJAMIN D. BROWN, ESQ.**
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Avenue, N.W., Suite 500
Washington, DC 20005
(20) 408-4600

**JOSEPH SAVERI, ESQ.**
**ITAK MORADI, ESQ.**
THE JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1505
San Francisco, California 94108
(415) 500-6800

For the Defendants:

**J. COLBY WILLIAMS, ESQ.**
**SAMUEL MIRKOVICH, ESQ.**
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
(702)382-5222

**AARON T. CHIU, ESQ.**
LATHAM & WATKINS, LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111
(415) 391-0600

////

PATRICIA L. GANCI, RMR, CRR    (702) 385-0670

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

APPEARANCES CONTINUED:

**BENJAMIN CABRANES, ESQ.**
DUNN ISAACSON & RHEE, LLP
401 Ninth Street NW
Washington DC 20004
(202) 240-2900

**JOSEPH AXELRAD, ESQ.**
LATHAM & WATKINS, LLP
10250 Constellation Boulevard, Suite 1100
Los Angeles, California 90067
(424) 653-5500


      LAS VEGAS, NEVADA; THURSDAY, OCTOBER 30, 2025; 2:25 P.M.

                           --oOo--

                    P R O C E E D I N G S

         COURTROOM ADMINISTRATOR:  Good afternoon.  The matter now before the Court are three status conferences in the following cases:  2:21-cv-1189-RFB, Johnson, et al., versus Zuffa, et al.; Case Number 2:25-cv-914-RFB, Cirkunovs versus Zuffa; and Case Number 2:25-cv-946-RFB, Davis versus Zuffa.

         Counsel, please make your appearances beginning with the plaintiffs.

         MR. DELL'ANGELO:  Good afternoon, Your Honor.  Michael Dell'Angelo on behalf of plaintiffs.

         MR. MADDEN:  Good afternoon, Your Honor.  Patrick Madden on behalf of plaintiffs.

         MR. GIFFORD:  Afternoon, Your Honor.  Daniel Gifford on behalf of plaintiffs.

         MR. BROWN:  Good afternoon.  Benjamin Brown on behalf

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

of plaintiffs.

MR. SAVERI:  Good afternoon.  Joseph Saveri on behalf of plaintiffs.

MS. MORADI:  Good afternoon, Your Honor.  Itak Moradi for plaintiffs.

THE COURT:  Okay.

MR. CHIU:  Good afternoon, Your Honorer.  Aaron Chiu on behalf of defendants.

MR. AXELRAD:  Good afternoon, Your Honor.  Joseph Axelrad on behalf of defendants.

MR. CABRANES:  Good afternoon, Your Honor.  Benjamin Cabranes on behalf of defendants.

MR. WILLIAMS:  Good afternoon, Judge.  Colby Williams on behalf of the defendants.

MR. MIRKOVICH:  Good afternoon.  Samuel Mirkovich on behalf of defendants.

THE COURT:  Good afternoon.  We have a few issues we need to address today, and then we'll see you again on Monday, as I understand it.

Let's start with the motion to seal in Johnson.  So what I intended to do was to grant the motion to seal in part and deny it in part.  I don't think that the individual names of the fighters should be a part of the record, and I know there's part of an appendix that includes that.  And I thought that I had ordered that there be a redacted version of these documents

as relates to confidential personal information be filed.  I don't know that I see that in the record, and we looked for it.

And so my ruling will be that the names will be redacted, not the content of the agreements, but the declaration also -- I think it's the Yates declaration will be sealed.

But I would ask the defendants simply to file a proposed set of documents consistent with this order under seal before we release them.

Any questions about that, Mr. Chiu?

MR. CHIU:  No.  No issue with that, Your Honor.

THE COURT:  All right.  Thank you.

All right.  Let's turn to the motion for sanctions. Who's going to be arguing this for the plaintiffs?

MR. DELL'ANGELO:  I'll -- I'll address the motion, Your Honor.

THE COURT:  And so let me just be clear about this --

MR. DELL'ANGELO:  Yeah.

THE COURT:  -- so we're all clear, right.  I'm deferring ruling on the sanctions as it relates to any monetary or otherwise sanctions.  After speaking with Judge Weksler, I'm not going to appoint a special master, and to the extent that that's hanging out there as an issue, it's not an issue because Judge Weksler is going to take over and handle discovery.

We initially thought that we could try this abbreviated procedure, but it turns out that's probably not the most

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

efficient way to do things.  Now, I'm just going to continue to have regular status checks to address outstanding discovery issues essentially after Judge Weksler addresses them.  And we'll figure out, you know, what happens when there's disagreement as to her orders.

We're in early days now, but generally what will happen is if there's a disagreement about an order, I will address it at the next status conference that I have after her order on a respective discovery issue.  And we'll iron that out a little bit, but so far I don't think she's issued any orders yet where I see formal objections filed.

So I just want to clarify about the sanctions.  As relates to the other sanctions that are being asked, I'm not going to decide that now.  All right?

Mr. Dell'Angelo, any questions about that?

MR. DELL'ANGELO:  No, Your Honor.  Thank you.  I appreciate the guidance, and we're happy to continue to work with the magistrate.  And, again, I think the guidance on that point and how to move forward is helpful and appreciated.  Thank you.

THE COURT:  Okay.

Any issue with that from the defendants?

MR. CHIU:  Your Honor, no issue with that.  And obviously we -- we had a status conference with Judge Weksler, and there are some outstanding issues I think we're just waiting

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

decision on.

THE COURT:  Okay.

MR. CHIU:  But beyond that, that process sounds amenable to defendants.

THE COURT:  Okay.

Now, let's turn to the joint stipulated discovery plan and scheduling order conflict.  So, as I understand it, Mr. Dell'Angelo, I just want to make sure I'm understanding what the date is that you're seeking as relates to filing a response. Because my understanding is that you're just seeking to next year, but the motion to certify will be the year after.  Is that correct?

MR. DELL'ANGELO:  Yeah.  So you're looking at ECF 258, Your Honor?

THE COURT:  Yes.

MR. DELL'ANGELO:  Okay.  Yeah, I think where -- where there's divergence really is just on how to address discovery around the motion to compel arbitration.

THE COURT:  I thought it was just the issue of the date.  So maybe I'm misunderstanding what the issue is.  I thought the plaintiffs were arguing that you want more time because you think that there's merits-related discovery that's relevant for the motion to compel arbitration, and so you want until next year, I think it's August of next year --

MR. CRAMER:  Correct.

2:21-cv-01189-RFB-BNW,  2:25-cv-00914-RFB-BNW,  2:25-cv-00946-RFB-BNW

THE COURT:  -- to file a response.  Is that correct?

MR. DELL'ANGELO:  That's correct, Your Honor.  Yes.

THE COURT:  Is there any disagreement about what that discovery is?

MR. DELL'ANGELO:  I don't know that the parties have sufficiently engaged on that question.  So the letter -- I will say that the letter, deficiency letter, we sent to the defendants on October 28th addressed some arbitration-related issues, and that's something that will come before the magistrate.  Because we indicated at the hearing on August 29th when these issues were raised is that -- and in response to Your Honor's observation that evidence of monopsonization, you know, more largely would be part of what may need to be considered in that motion.  And then there is subset of Requests 8 through 10 that deals spec- -- with specific arbitration-related discovery.

I think the parties -- and I don't want to speak for Mr. Chiu or whomever on the defendants' side is handling this, but I think the parties are still engaging on exactly what discovery will come out of that process.  And so that's part of what I think the somewhat dueling schedules in 258 were designed to address.

THE COURT:  Well, Mr. Dell'Angelo, part of my question really relates to if you want additional time to file this.

MR. DELL'ANGELO:  Yep.

THE COURT:  Given the issues that you're raising, why

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

wouldn't it just then be filed or have it be fully briefed with the motion to certify?  I mean, that's when all of the information would be done --

MR. DELL'ANGELO:  Right.

THE COURT:  -- right.  I'm just trying to understand why there's this divergence.  Like, what is it you expect is going to be finished by August of next year that would allow for you to go forward with a response?  Only because I don't want to then have you say, "Well, we discovered this other thing two months later.  Now we want to supplement it."  And then we're in this cycle of deciding that.

I mean, I do think and do find that the evidence related to monopsonization is relevant for the inquiry as it relates to the arbitration agreement, particularly on the issue of unconscionability.  I think that's clearly relevant evidence. I just don't want to be in a situation where I'm getting requests from the plaintiffs for leave to amend because of discovery that's coming in.

So what is it you expect will be done by August, but not -- and not be needed, right?  Because you're still going to be going through some merits discovery after that.

MR. DELL'ANGELO:  That's a fair point, Your Honor. The -- what we were trying to do was align the briefing on that motion or our opposition to it with the current date for the close of fact discovery.  I think if what Your Honor is

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

suggesting is it may be more prudent to align it with a little bit later with class certification, that's perfectly --

THE COURT:  I'm not saying that.  I'm not saying you should do that.  What I'm saying is that what I'm concerned about is that I get the motion --

MR. DELL'ANGELO:  Yes.

THE COURT:  -- next year, which I think is appropriate, but then more information's coming in and you're asking me to consider it.

MR. DELL'ANGELO:  Right.

THE COURT:  So all I'm saying to you is, if you're saying that we are relying upon that date because that's the end essentially of fact discovery and we think that we'll have all the facts then, that's fine.

MR. DELL'ANGELO:  Okay.  Yeah.

THE COURT:  Is that your position?

MR. DELL'ANGELO:  That -- that's our position.

THE COURT:  Okay.

MR. CRAMER:  That was the proposal.  We're -- it would be perfectly fine from our perspective to align it with class -- the class date which is --

THE COURT:  I'm not saying you should do that.

MR. DELL'ANGELO:  Okay.

THE COURT:  I just wanted to make sure that you weren't expecting that there might be additional information that would

come in after you filed your response to the motion to compel

arbitration such that you would be asking me to wait.

MR. DELL'ANGELO:  I don't anticipate that.  The only

thing I foresee, Your Honor, maybe just to get it out now, is if

the deadline for the close of fact discovery for the cases more

broadly would move, you know, I think that that -- the date for

the opposition on the motion to compel arbitration would need to

move with it.  But, otherwise, no.  You...

THE COURT:  Okay.  Well, let's hope that that doesn't

happen.

MR. DELL'ANGELO:  Okay.

THE COURT:  But in this case I think I've learned to

keep an open mind about dates and times and deadlines.

Mr. Chiu, I understand the defendants' position on

this, but I agree with the plaintiffs that the fact discovery

and information discovered in the fact discovery is relevant to

the motion to compel arbitration response.  So I'm going to

allow for additional time to align it.

Now, if at a certain point you think it's just going on

indefinitely, then you can ask me to step in.  But I think it's

relevant.

MR. CHIU:  So, Your Honor, a couple points on that.

You know, coming out of the last status conference the

discussion was had that the plaintiffs wanted some additional

limited arbitration-related discovery.  We already have

outstanding RFPs that go to arbitration. There was this additional tranche that was discussed, which was communications between executives potentially relating to the arbitration clauses. It was agreed upon that was the limited set.

For the plaintiffs to come now and suggest a schedule that effectively maps arbitration-related discovery to the entirety of fact discovery in these cases, we submit, you know, allowing that schedule effectively is -- would be a denial of the motion to compel arbitration. It would be delaying -- it would be allowing full fact discovery in both cases, Johnson and Cirkunovs --

THE COURT: So how, Mr. Chiu, am I to get the information about monopsonization faster? I think monopsonization is a significant factor in unconscionability. If the parties could agree more quickly to information regarding that, I would be happy to consider that. The way this case has gone is the parties have not been able to work things out. I've had to intercede on multiple occasions, and I'm not saying this is you in particular, but your clients have not been -- and I want to make this clear and I've made this clear previously. Your clients have not complied with previous orders that this Court has given.

Now, I haven't decided the motions for sanctions because I haven't decided what to do about it, but I have said to you previously, right, there has been a history of delay on

the part of your clients in releasing information.  I don't want that to continue.  If you think things can be handled on an expedited basis, that's fine.

But my question to you is, given the fact that monopsonization I think is relevant to the Court's determination of unconscionability as a factor in the context of the arbitration agreements, how can I get it faster?  I'm happy to get it faster.

MR. CHIU:  Your Honor, we discussed this at the last status conference, right, when you raised this issue.  And Mr. Cramer agreed that, you know -- well, obviously they took the position that evidence of monopsony relates to it.  We obviously dispute that, but what was discussed as, kind of, the limited discovery that would get at that issue were the communications that we had agreed to go look for and produce, to the extent there are any, amongst executives about deploying the arbitration clauses, right.  That was really to get at that issue.

Beyond that, there's three --

THE COURT:  Well, let me ask you a question, Mr. Chiu.  Are there disagreements about the parties as it relates to market share and other aspects of market dominance by Zuffa with respect to the fighters during this period of time?  Because if there's agreement about that, then I don't know that we need to have it go all the way to fact discovery, right.

14

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

My concern, in reading the papers for this case, is that you all seem to have diverged a little bit about the nature of that.  So when I think about what would be relevant, and I'm talking about, sort of, monopsonization and what its impact would be, part of that is market share and market dominance with respect to your client.

So what's a way for us to be able to get to that quickly?  Again, I don't know about necessarily all the fact discovery, but that's what I'm focussed on, right, the discovery you mentioned as it relates to the discussion about the deployment or use of the arbitration agreements but also the market itself.

So how do you think we can get that information on an expedited or forefronted basis?  Because if that can happen, I'm happy to move the date up.

MR. CHIU:  I mean, I think we have more than substantially complied with the discovery.  The plaintiffs have plenty of it.  If you're talking about expert discovery and all that, I mean, that happens later.  But, fundamentally, allowing arbitration-related discovery to map onto the entirety of the case, I would submit, would effectively deprive the defendants of their right to vindicate the issue of whether the arbitration clauses are valid and enforceable, Your Honor.

THE COURT:  You're not exactly answering my question, though, Mr. Chiu.  That wasn't exactly my question.

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

My question is, are you saying that you think that there's going to be a dispute about, sort of, market share and market dominance as it relates to --

MR. CHIU: Absolutely.

THE COURT: Right. And so --

MR. CHIU: But those are merit --

THE COURT: Hold on. Hold on a second, Mr. Chiu.

So if the Court were to make the finding that that's central to its determination of unconscionability, how could I do that on an expedited basis? I mean, I don't necessarily disagree with you that the point of arbitration is to avoid essentially going through full litigation. But in a case where there are facts regarding unconscionability that are directly related to my decision, my question to you is how can I get those facts more quickly on an expedited basis to address that. I'm open to considering how we do that. I just want to know what you would suggest.

MR. CHIU: I would submit that based on even the discovery that the plaintiffs have thus far they are able to make those arguments, you know, about market shares, about whatnot, and in support of and in opposition to a motion to compel.

THE COURT: Okay.

MR. CHIU: We're not starting from a blank slate. We've already responded to a number of RFPs that are -- get at

PATRICIA L. GANCI, RMR, CRR      (702) 385-0670

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

specifically arbitration-related issues.  We've also agreed to produce -- search for and produce anything else that may be related to the executives' discussion of and implementation of the arbitration clauses, to the extent that ever happened.

And our position is that that is more than sufficient discovery for the plaintiffs to then oppose our motion to compel arbitration.  But to stretch it out to the point of overlapping with the entirety of fact discovery across these cases, that would effectively be a denial of -- of the motion to compel arbitration, Your Honor.

THE COURT:  Okay.  Let me hear from the plaintiffs on this.

MR. DELL'ANGELO:  Thank you, Your Honor.  Michael Dell'Angelo.

I think as Mr. Cramer said and the Court observed correctly is that the monopsonization evidence is critical to the determination --

THE COURT:  So what do you understand that to be, Mr. Dell'Angelo, specifically?  Because, again, some of the fact discovery is not going to be related to that.

MR. DELL'ANGELO:  Sure.  It is by no means everything, but it is a fair amount of it.  And --

THE COURT:  What is that?  Okay.  When you say, "a fair amount of it," I --

MR. DELL'ANGELO:  I'm sorry.  Fair enough.  The

PATRICIA L. GANCI, RMR, CRR     (702) 385-0670

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

discovery that may be --

THE COURT:  So, specifically, what is the discovery that you don't have that you think that you need to have to decide this?

MR. DELL'ANGELO:  So, you know, a big issue would be evidence of coercion that may -- and one place we saw that in Le in particular and you'd expect to see it in a case like this would be in discussions internally about negotiations and negotiations with fighters and their agents.

There is an absolute dearth of that evidence that has been produced thus far.  One of the questions we actually raised with the defendants recently is, is that because there simply were no negotiations other than the handful of things that have been produced, or are we missing a lot of discovery.

So, you know, it's issues like that.  And I guess just one thing I would point out, Your Honor, is this --

THE COURT:  Okay.  No, no --

MR. DELL'ANGELO:  Okay.

THE COURT:  -- let's not --

MR. DELL'ANGELO:  Understood.

THE COURT:  Let's not go through the general.

MR. DELL'ANGELO:  Yep.

THE COURT:  Let's go back to the specific.  Okay.  So the first thing you said was internal documents regarding negotiations over contracts.  That's one thing.

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

MR. DELL'ANGELO:  Right.

THE COURT:  What else?

MR. DELL'ANGELO:  It would be discussions and communications internally and with fighters about the arbitration provisions themselves --

THE COURT:  Okay.

MR. DELL'ANGELO:  -- why they have them, their compensation data, right.  I mean, one of the things that was key in Le, key in any, you know, sort of, antitrust case like this, would be like what -- what the compensation data looks like over time.

That's...

THE COURT:  Well, I'm a little fuzzy as to why the compensation data would be necessary.  I mean, certainly in the context of what I think might be relevant in terms of monopsonization, their market share, market dominance, right.

MR. DELL'ANGELO:  Right.

THE COURT:  You all consistently argue they should be getting paid more.  So I'm not really sure what the issue is as relates to the compensation data being relevant.  Like, how would that be relevant to unconscionability?

MR. DELL'ANGELO:  Okay.  So another way -- another way to look at that would be another piece we would need is information about competitors, right, and -- and what interactions were with competitors or what the competitive

landscape was like.  That's --

THE COURT:  Okay.  You're being very general, Mr. Dell'Angelo.  "Information about competitors" is a broad term, right.

MR. DELL'ANGELO:  Sure.

THE COURT:  In the initial case, right, there was specific information about competitors, and that related to information some of which you all could get externally, like --

MR. DELL'ANGELO:  Right.

THE COURT:  -- the external rankings of the fighters. You don't need them to give that to you.  That actually comes from, if I recall, these rankings, and then you just matched up in your arguments to me, "Look, this is how many fighters they control."

MR. DELL'ANGELO:  Sure.

THE COURT:  So, right, I'm trying to understand what it is that they have that prevents you from responding.

MR. DELL'ANGELO:  Okay.  So --

THE COURT:  Because, again, as it relates to market dominance, some of this doesn't require them to produce anything, right?

MR. DELL'ANGELO:  Some of it, yes.

THE COURT:  Because I expect what you're going to argue to me is the fighters had no choice.  They had nowhere to go, right.

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

MR. DELL'ANGELO:  Right.

THE COURT:  They could only go to Zuffa.  Like, that's not -- I mean --

MR. DELL'ANGELO:  Right.

THE COURT:  -- it's going to be complicated in some of the details, but the argument's actually very basic.

MR. DELL'ANGELO:  Right.

THE COURT:  And you're going to say, "That's unconscionable."  They're going to say, "No, it's not right." Right?

MR. DELL'ANGELO:  Right.

THE COURT:  So, right --

MR. DELL'ANGELO:  So, again, so maybe an example to build off of that, Your Honor, would be market share data and information that -- you know, some of which is only going to lie with them.  And even getting --

THE COURT:  What specifically is only going to lie with them in terms of market share?  Because what you're really talking about are potentially a couple of things that are external, the number of events that might be offered in the output market --

MR. DELL'ANGELO:  Yeah.

THE COURT:  -- how many of these events are.  Because I know you have also this argument about their monopoly on the output actually reinforces their monopsony on the input.  Fine,

PATRICIA L. GANCI, RMR, CRR    (702) 385-0670

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

but you all have that number.  Like, you don't need them to give you that number, right.  I mean, I assume, like, these are public events.  I don't think it would be hard for them to come up with the numbers that we did this many events across this time if you asked them that number, right.

MR. DELL'ANGELO:  Sure.

THE COURT:  So I'm not sure why that would take long.  Some of the other stuff you're asking I think, again, in discovery, perhaps, and some of these issues we had about custodians and all of that.

MR. DELL'ANGELO:  Right.

THE COURT:  But they have now addressed some of that.  You can ask them to provide documents about negotiation of contracts, documents about how contracts were renewed or not renewed, and discussions with fighters.  Okay.

MR. DELL'ANGELO:  Right.

THE COURT:  I think that is relevant.  They should provide that.

You can ask, I guess, about nonpublic information about market share, if they have reports about their own market share.

MR. DELL'ANGELO:  Yeah.

THE COURT:  You know, they had some reports about that.  Actually, I don't know if they had explicit reports about that in the earlier case.

But it sounds to me like, one, that you all haven't

PATRICIA L. GANCI, RMR, CRR      (702) 385-0670

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

specifically asked for some of this stuff.

MR. DELL'ANGELO:  Well --

THE COURT:  I actually thought that that was part of the sticking point, which is why I was more open to extending it, but it sounds to me like some of this information you're not asking for or haven't asked for.  And some of it you have as relates to the internal discussions, which we can talk about. I'm going to ask Mr. Chiu about that.  But some of this other stuff --

MR. DELL'ANGELO:  Well --

THE COURT:  -- it doesn't sound like you need them to help you with.

MR. DELL'ANGELO:  Well, actually, Your Honor, I think all the things I've listed, and more, that we would need we have asked for.  They're in our larger set of document requests, you know, outside of the 8 through 10 just -- that just are focussed on specific arbitration-related discussions.  So things like, you know, who do you consider your competitors to be?

Another -- another specific area we're inquiring about in discovery and I don't think -- we don't believe that we have a satisfactory answer to, but I think would need to get to this question -- some of these monopsonization questions are, you know, for example -- and it's, again, a big issue in Le -- which fighters, if any, did you want to keep, but you weren't able to, right, things like that.  I mean, those are all questions that

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

we're circling around that I think go to the answers that we would need on these monopsonization questions.

So we -- the point is, Your Honor, however, I think we have asked for everything that we would need.  I just don't think that we have received it all.

THE COURT:  Well, there's a difference between asking for everything that you need for the response and that also is part of a larger request --

MR. CRAMER:  Yep.

THE COURT:  -- than us dealing with the arbitration discovery.  Because what I'm inclined to do, Mr. Dell'Angelo, is to say to you all, "Look, give me a list within a week of exactly the discovery that you think, right, is outstanding or that you need, right, for" --

MR. CRAMER:  Yep.

THE COURT:  -- "a response to the arbitration."

MR. DELL'ANGELO:  I think that's --

THE COURT:  And then I can simply -- without going through Judge Weksler, because I'm going to have to decide this myself, I can simply set a hearing, we'll come back, and we'll hash it out.  And then I'll ask Mr. Chiu and his colleagues to look at this and say, "Okay.  Give me a timeframe for a response on this."  And I'll also say, "This is too broad.  You need to narrow this down."  And we can do it as we've done it before in just a day.

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

Because I misunderstood when I was looking at some of what you had initially said.  I thought there were delays as relates to what was not being provided.  But it sounds to me like some of it's been requested, but some of it hasn't been and we need to narrow that down.  And I think given the history of this case you probably are going to need a little intervention for that to happen.

MR. DELL'ANGELO:  Right.

THE COURT:  So let me ask Mr. Chiu some questions, Mr. Dell'Angelo, and I'll come back to you.

MR. DELL'ANGELO:  Sure.  May I -- may I -- sorry.

THE COURT:  I'll come back to you.

MR. DELL'ANGELO:  Okay.  Thank you.

THE COURT:  So, Mr. Chiu, what I'm inclined to do now that I've heard both of you all is to say, "Okay.  Let them come up with a specific list," right.  Because it sounds to me like some of the stuff they're asking, some may be more time consuming than others, but some of this stuff should be able -- once they ask it, 45 days or so.  I don't know that it should take that long to address it if you all know the specific requests.

And it sounds to me like what you're saying is they've requested somethings, but somethings they haven't requested yet.  And you're not really sure what is arbitration-related discovery versus other things so you don't even know what to expedite to

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

give it to them.  Is that fair?

MR. CHIU:  Well, a couple points on that, Your Honor. That is fair.  I think they've taken this position that now everything that's merits relates to arbitration, so there was no differentiation.  But on the things to this point, up until this point in time, that were directed at arbitration-related discovery, RFPs 7, 8, and 9, we have responded and with documents in response to those RFPs.  It's listed in the discovery tracker that we provided to the Court, over 8,000 documents in response to those three RFPs, which are specifically directed at arbitration-related issues.

THE COURT:  So you're saying -- when they're talking about these internal documents regarding the arbitration agreement and discussions between Zuffa employees or managers, you're saying you've already produced that.

MR. CHIU:  I don't want to commit that we've produced everything, but we have responded to those RFPs.  We've done search terms in our documents that go to those RFPs. Additionally, coming out of the last hearing -- and our proposed schedule, right, going to December 5th, we would commit to get -- to searching for and producing, to the extent there were discussions amongst executives relating to the arbitration clauses, the utilization of them in the promotional agreements. That's something we've committed to do.  We're in the process of trying to look for that.  To the extent they exist and there

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

were discussions that were not privileged, we're going to produce those.

THE COURT:  So let me ask you one question because I do think, Mr. Chiu, there are a couple of things that would potentially be relevant because they're going to make the argument that I generally sketched out, I believe, about the arbitration agreements.  Some of that will be based upon who's under contract during timeframes and who's not, who fell out of contract.

Is that information that's already been produced, Mr. Chiu?

MR. CHIU:  Yes.

THE COURT:  Okay.

MR. CHIU:  The plaintiffs have all the contracts from the relevant time period from the fighters.

THE COURT:  Okay.

MR. CHIU:  I know there's a dispute about whether we essentially pulled them, but in terms of e-mails and cust- -- we have produced that information.

THE COURT:  So from your perspective like --

MR. CHIU:  And same with the compensation data, right, because that's within the contract, so...

THE COURT:  So you're saying as it relates to some of the issues that I have laid out as being relevant for consideration for the arbitration agreement, particularly on

PATRICIA L. GANCI, RMR, CRR      (702) 385-0670

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

this issue of unconscionability and more particularly on the issue of market dominance and potentially -- and potentially compensation and conversations about negotiations of contracts and who's under contract, your position is much of that has already been produced.

MR. CHIU:  A significant amount, yes, Your Honor.

THE COURT:  When you say "a significant amount," Mr. Chiu, that leaves a little leeway.  How much do you think is left to be produced from the categories that I just described?  And how long do you think it would take to produce that?

MR. CHIU:  I think under our proposed schedule we had committed to doing it by December 5th.  It's really that -- the last, kind of, tranche of what we talked about last time, which is to the extent executives talked about wanting to deploy arbitration provisions in these revised promotional agreements, we're looking for that, to the extent it exists.  That's what we've been focussed on.  That's coming out of the last hearing our understanding of the additional, kind of, limited arbitration-related discovery that we were to focus on.

As to outstanding requests and RFPs, our position is that we have produced responsive documents, including compensation data, contracts.  And then on the piece of negotiations I'll just add that, you know, the plaintiffs have been also subpoenaing third parties and managers and -- and attorneys for that sort of information as well.

PATRICIA L. GANCI, RMR, CRR    (702) 385-0670

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

So this idea that, like, they're without what they need in terms of evidence and documents that bear on this narrow arbitration issue and conscionability [sic], I mean, it just -- you know, from where we stand, the response has been really conflating it with full-blown merits discovery.

THE COURT:  Okay.  All right.  Thank you, Mr. Chiu.

So, Mr. Dell'Angelo, here's what I -- here's what we're going to do in this case.  I'm going to order that the plaintiffs -- I'm going to give you a week, so I'll give you until November 7th, to outline specifically, right, not generally, specifically, what information you've requested that you believe is related to the arbitration briefing that has not been produced, what information has been produced in part that you're continuing to seek, right, and I want you to list specifically what that information is.  Okay?

Because it seems to me that, in fact, you all should be able to have this information by December 5th or sometime in December, and then I don't know that we need to go all the way to August.

But I think what we need to do is have you be specific with the information so they can respond specifically and then I can evaluate that.  And then we can reach an end date, right, and the Court can determine if there are any outstanding disputes and just move forward.

Based upon what our conversation has been it seems like

PATRICIA L. GANCI, RMR, CRR    (702) 385-0670

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

the process is actually moving forward.  I wasn't clear about that when I read the briefs, but it sounds to me like the defendants have committed to providing this information by December 5th.  If there's something specifically you think that they're not providing, right, then you need to identify that in what you're going to submit, a supplement, to the Court and to the defendants on the 7th of next -- of next month, which is a week from tomorrow.  Okay?

And then, Mr. Chiu, I'm going to ask you all a week later just to respond just to tell me what you have produced, what's outstanding, and when you expect it to be produced.  If it's something that wasn't previously requested, then you can indicate, "This was never requested from us previously.  So we're not necessarily objecting to that, but this is a new request," whatever you think would be relevant.

And then I'm going to set another status conference. We're going to come back and address this.  Because after hearing the discussions from the parties, I do think that we can resolve this sooner than August of next year with a little help.

So any reason why we can't proceed in that fashion, Mr. Dell'Angelo?

MR. DELL'ANGELO:  No, Your Honor.  I think it's a very efficient suggestion and I welcome it.  We'll be happy to get that to you in a week.  Just to be -- so we're clear as we leave here today, I don't think that there's anything that we have not

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

requested that we would be listing in that submission to you that --

THE COURT:  That's perfect.

MR. DELL'ANGELO:  -- was not already requested.  And I do think that there are significant gaps in what we have received, but we will address that.

And just one point of clarification.  There are a number of requests at issue, 96 or so.  There are three that are specifically related to arbitration clauses or discussions about them.  So there's a subset of this same 96 about the -- that will go to the monopsonization, things that we think are -- you know, responses have not been sufficient, we'll detail those for you, and then also with respect to the three that get to very arbitration-specific things as well.

THE COURT:  Well, this is your opportunity, Mr. Dell'Angelo, to tell me specifically what it is you think is missing that they have that hasn't been produced, right.

MR. DELL'ANGELO:  Yes.

THE COURT:  And that way, for example, if they don't have it, Mr. Chiu can come in and say, "We looked and we don't have it."

MR. DELL'ANGELO:  And we will do that.  I mean, I think part of what undergirds this is what we're addressing with the magistrate about custodians and search terms, but that -- that will have to filter through this process and we will absolutely

get you the list that you've requested, Your Honor.

THE COURT:  Well, all that should continue.  I'm not saying that should stop.

MR. DELL'ANGELO:  Understood.

THE COURT:  But I am saying that because we have a motion to compel arbitration filed, this has to take priority so we can get it resolved, right.

MR. DELL'ANGELO:  Understood.

THE COURT:  Because that may all stop later if I grant the motion to compel arbitration, right, or if I deny it, then there is an appeal.  Things may stop.  So let's focus on this as a priority --

MR. DELL'ANGELO:  Yeah.

THE COURT:  -- in moving forward.

MR. DELL'ANGELO:  Right, and part of what will make it unique -- makes this unique, Your Honor, though, is there is the Davis case, right.  So Cirkunovs is dealing with the arbitration piece, but even if the motion to compel arbitration were granted in Cirkunovs -- excuse me -- Johnson will continue on, right.

THE COURT:  Well, I'm not saying that, but I --

MR. DELL'ANGELO:  So that process just wouldn't stop.

THE COURT:  -- I think there's still going to be somethings that will stop if I grant the motion to compel arbitration as it relates to what the defendants are doing now.  Now, it doesn't stop all three cases.

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

MR. DELL'ANGELO: Right.

THE COURT: We all know that, but it stops some of what would move forward and that's the purpose of an arbitration agreement.

So, Mr. Chiu, any reason why we can't proceed in that fashion?

MR. CHIU: No, Your Honor. I think -- you know, I think we've been trying to proceed expeditiously in that very fashion, and I think that -- that approach makes sense. You know, I think the Court has heard our views on why this needs to be resolved quickly, and we'll endeavor to do that.

THE COURT: Well, I'm persuaded by that, and we're going to expedite this. When are you all next in front of Judge Weksler?

MR. CHIU: We don't currently have a date.

MR. DELL'ANGELO: Yeah.

THE COURT: Okay. Because I think that we can -- if we look at this...

(Court conferring with courtroom administrator.)

THE COURT: What about we come back Thursday, November 20th? Does that work for the parties?

MR. DELL'ANGELO: Speaking for the plaintiffs, Your Honor, it works for me. I think there may be other people in our team who would like to participate like Mr. Cramer, and I don't -- I don't have his schedule. I apologize, but --

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

THE COURT: Well, we don't need all of you here. Look, this is --

MR. DELL'ANGELO: Understood.

THE COURT: We can -- you know.

MR. DELL'ANGELO: Understood.

THE COURT: People can sub in and sub out.

MR. CHIU: Works for defendants, Your Honor.

THE COURT: But I want to try to get a date on my calendar that I can hold and get this resolved and move it quickly. I don't want to wait until after Thanksgiving, right. I would anticipate and my goal would be, if it's not December 5th, that all of this would be done in December.

Now, maybe we move the response date back a little bit, but I actually don't think that we need to go back to August. I definitely think all of this can be produced and provided in December.

So the one thing I just want to be clear about, Mr. Chiu, is I really want to emphasize the need for this information to be provided from thorough and detailed searches, right. Because I don't really want to discover later on in merits discovery that there was stuff that was relevant that wasn't provided. I mean, that would be a problem on all sorts of ways based upon an order of arbitration, but --

MR. CHIU: Yeah.

THE COURT: -- I say that because I know you don't

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

completely control this process, but to emphasize to the custodians and everyone else it's really important that we not have things trickle in later on this case. And so, again, I know you know that. So I'm not directing this at you personally per se, but to please emphasize with your client and the custodians that, particularly on the arbitration since we're expediting that, they should still be thorough so we don't have things coming in later. Okay?

MR. CHIU: Understood, Your Honor.

THE COURT: Is there any reason why, Mr. Chiu, we couldn't get all of this done by mid December?

MR. CHIU: Sitting here, I don't see a reason we couldn't, no.

THE COURT: Okay.

So the other thing, Mr. Dell'Angelo, just so we're clear is I don't -- the other thing is November 7th is when you have to give me your list, detailed and specific.

MR. DELL'ANGELO: Yes.

THE COURT: No supplemental lists. That's your last shot at asking for arbitration-specific information.

And then, Mr. Chiu, I mean, you're not asking for information, but similarly, right, I want your response to be as detailed as possible so when we come back on the 20th, I would anticipate we'll have a workday and we'll just have everything worked out.

If, for example, Mr. Chiu or Mr. Dell'Angelo, you're going to want me to resolve even issues like search terms or things like that, that's fine.  I don't mind getting into the weeds on the arbitration issue, but I don't want to have something raised with me later.  My goal would be to resolve all family business at that time.  Okay?

MR. DELL'ANGELO:  Yep.

THE COURT:  So please try to work this out, at least your areas of disagreement.  Even if you don't agree, at least try to identify them because one of the concerns I have and have had with this case is sometimes you all haven't even identified what is a common area of disagreement, right.  So that's why I'm saying to you, Mr. Dell'Angelo, I want the plaintiffs to be as specific as possible with these requests and, also, if you're talking about specific search terms or particular individuals, right.

I mean, the previous case as relates to the negotiations, I mean, it was helpful, right, that there were just a few people who did the negotiations.  Now, that's not -- I don't know if that's still the same case.  I don't know if -- I think it was Mr. Silva, whoever was the person who used to do it --

MR. DELL'ANGELO:  Yeah.

THE COURT:  -- right, that made it I think probably a lot easier in the first case because you really were just

talking about one or two people who were doing all the negotiations for the contracts.

But if you're saying, "Okay. We have identified these three people," then I need to know who the people are. So there's not a limit, necessarily, on the specificity on November 7th. I mean, you're not going to get everyone, of course, on the rainbow. But you're going to have to justify who these people are at the hearing. But I really want to avoid, sort of, again, a drip drip drip from either side as it relates to this issue.

MR. DELL'ANGELO: Yeah. So, Your Honor, we will do our best to frame some of those -- I mean, we'll get as detailed as we can. I will say, you know, with respect to somethings like the custodians because of how limited the information that we have, volume aside, about kind of current operations, it can be difficult to triangulate on, you know, who some of the individuals are. I mean, we can kind of --

THE COURT: Well --

MR. DELL'ANGELO: We'll do our best.

THE COURT: -- for example, if you haven't gotten a clear answer as to who negotiates the contracts, we need to figure that out.

MR. DELL'ANGELO: Right, because we do not. To be very clear, we do not.

THE COURT: Okay. So, Mr. Chiu, that's the sort of

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

issue -- look, again, I don't know if you've provided the information.  In the previous case we eventually got to that.  I mean, there were, like, three or four people.  And that's -- those are the people we focussed on.

MR. CHIU:  Your Honor, I would submit that in the discovery and in everything we've provided, including interrogatories responses, the plaintiffs have that information.

THE COURT:  Well --

MR. CHIU:  I don't want to name the names in open court, but it's not a secret who --

THE COURT:  Okay.

MR. CHIU:  -- at Zuffa negotiates the contracts, who's involved.  That is not something that we've been hiding the ball on.  There are 35 custodians --

THE COURT:  Okay.

MR. CHIU:  -- in this case.  Documents we've produced, you know, all the relevant individuals that have anything to do with the Zuffa business and relevant documents have been part of the discovery.  So this idea that they're operating in the dark even on who is involved in the negotiations, it just -- it's -- I think it's --

THE COURT:  You're saying it's contradicted by what's been provided.

MR. CHIU:  Correct.

THE COURT:  Okay.  Well, look, again, that's why --

PATRICIA L. GANCI, RMR, CRR      (702) 385-0670

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

save some hours on the 30th.  We'll get started at 10 o'clock -- on the 20th, excuse me, and just work it out.

I may ask you again, Mr. Dell'Angelo, to be specific about that.

MR. DELL'ANGELO:  Absolutely.

THE COURT:  I mean, first of all, you should have already directly asked them the question of who the people are.

MR. DELL'ANGELO:  We have, to be clear.

THE COURT:  And if there's not an answer, Mr. Chiu, I may ask you, "Well, who are the people," right, "and where is the answer to that," right.  Because I do want to be clear, Mr. Chiu, what I don't want to have happen is have you come back and say, "Well, it's in the 8,000 pages," when if you know the answer to the question, then you know the answer.  Now, you may not know.  You may say, "This changed over time" or "Things happened," that's fine.

But if I'm going to expedite it, right, there certainly may be information, right, that you all know where you can say, "Okay.  This person actually was not the person who was involved.  This person might have had some partial duty."  So I may ask you to be prepared or to bring someone from Zuffa who can assist you with answering questions about specific discovery, but I want that to be a working session where we work through all of that, we get specific answers, so that we don't have three or four more months of discovery disputes on the

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

arbitration issue.  Okay?

So I think, Mr. Chiu, it will be helpful potentially for you to have someone there who may have that specific information that's going to be identified in the November 7th filing, one or two people, because I will expect if I have a specific question that someone could answer that.  Because I'm going to hold them to the list and I'm going to hold you all to the answers.  And then we'll move forward based upon that.  Okay?

Any questions about that?

MR. DELL'ANGELO:  I have --

MR. CHIU:  One --

MR. DELL'ANGELO:  -- one follow-up question.  So if I understand it correctly, we'll provide the submissions to the defendants and Your Honor on November 7th.  I think if I heard correctly, defendants would respond by November 14th?

THE COURT:  That's correct.

MR. DELL'ANGELO:  Okay.  And then may we have a brief response by, say, the 18th just to be --

THE COURT:  Why would you need a reply to that?

MR. DELL'ANGELO:  That's why I'm asking, Your Honor.  I just could envision that there's going to be some disagreement about --

THE COURT:  Well, we'll talk about it on the 20th, right.

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

MR. DELL'ANGELO:  Very well.

THE COURT:  And we'll just -- that's why I'm saying, it may take us three or four hours to go through it, but I can almost guarantee you we're going to be done with all of those disputes and have them resolved by the end of our session on the 20th.

MR. DELL'ANGELO:  Understood.  Thank you, Your Honor.

THE COURT:  Okay.  Anything else, Mr. Chiu?

MR. CHIU:  Just for clarity, so we'll obviously serve the response on plaintiffs.  Is that something to be filed with the Court or submitted to the Court via e-mail?

THE COURT:  No, you both should file it in the docket for the case --

MR. DELL'ANGELO:  Okay.

THE COURT:  -- right, as a supplement to the discovery plan filing.  So they should both be filed on the 7th and the 14th.  Okay?

MR. DELL'ANGELO:  Okay.  Thank you, Your Honor.

THE COURT:  All right.  Is there anything else that I'm missing -- hold on.  Let me look at my notes -- that we need to address.

We did the -- so we have the motion to dismiss on Monday so we're not dealing with that now.  We have the motion to seal.  I addressed the issue of the motion for sanctions, the joint stipulation discovery plan and scheduling order.  I think

PATRICIA L. GANCI, RMR, CRR     (702) 385-0670

that's it, right?

MR. DELL'ANGELO:  There's a pending motion to compel on plaintiffs' first set of interrogatories that is identified in the status report --

(Court reporter interruption and clarification.)

MR. DELL'ANGELO:  ECF at 274, the status report, Page 2 of 16, also lists a pending motion to compel on plaintiffs' first set of interrogatories, Your Honor.

THE COURT:  Okay.  But is that something for the arbitration --

MR. DELL'ANGELO:  No.

THE COURT:  -- or something for Judge Weksler?

MR. DELL'ANGELO:  That's completely independent of the arbitration.

THE COURT:  Okay.  Well, again, that sort of stuff Judge Weksler can handle, but since I'm doing the arbitration, right, and we're expediting it, right, I'm going to handle this part.

MR. DELL'ANGELO:  Understood.

THE COURT:  Right.

So, anything else, Mr. Chiu?

MR. CHIU:  Nothing here, Your Honor.  Thank you.

MR. MADDEN:  Your Honor, Patrick Madden for the plaintiffs.  I just had a quick clarifying question.

I understood you to be saying that the motion to seal

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

has been resolved, which I understand.  I just want to be sure you're talking about ECF 272 for which we would otherwise have an opposition due on the 4th, right.  So that's off the calendar then?

THE COURT:  I thought it was 180.  This is an older one.

MR. MADDEN:  Oh.  Okay.  So we can file a response on November 4th to ECF 272.

THE COURT:  Yes.

MR. MADDEN:  Okay.

THE COURT:  This is the older one.  There's one that was, sort of, outstanding that the Court realized was there that we just need to resolve.

MR. MADDEN:  Then I am glad I asked for the clarification.  Thank you.

THE COURT:  Yes, I'm glad.  You wouldn't want to not be filing because I'm sure it will be raised as an issue, and Judge Weksler would have to deal with it.  Well, she's going to have to deal with it anyway.

Anyway, anything else, then, for today?  Are you all going to be here on Monday?

MR. CRAMER:  Not for plaintiffs, Your Honor.  Thank you.

THE COURT:  Well, who's arguing on Monday?

MR. CRAMER:  Mr. Davis will be arguing.

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

MR. SAVERI:  But I'll be back, Your Honor.

THE COURT:  I assumed so, Mr. Saveri.

MR. SAVERI:  Thank you.

THE COURT:  All right.

Mr. Chiu, are you going to be here on Monday?

MR. CHIU:  I will be, but Mr. Isaacson will be as well.

THE COURT:  Okay.  Anyone else?  I know, Mr. Williams, you're going to be here.

MR. WILLIAMS:  I will be here, Your Honor.

THE COURT:  All right.  Mr. Chiu, is there anything else, again, that we need to address from defendants' perspective?

MR. CHIU:  Nothing here, Your Honor.

THE COURT:  Anything else from other defense counsel?

MR. AXELRAD:  Thank you, Your Honor.

MR. CABRANES:  Thank you, Your Honor.

THE COURT:  All right.  Thank you for your time today.  We'll be adjourned.  Thank you.

MR. DELL'ANGELO:  Thank you, Your Honor.

MR. SAVERI:  Thank you, Your Honor.

MR. CHIU:  Thank you, Your Honor.

(Whereupon the proceedings concluded at 3:14 p.m.)

2:21-cv-01189-RFB-BNW, 2:25-cv-00914-RFB-BNW, 2:25-cv-00946-RFB-BNW

--oOo--

COURT REPORTER'S CERTIFICATE

I, PATRICIA L. GANCI, Official Court Reporter, United States District Court, District of Nevada, Las Vegas, Nevada, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Date:  October 31, 2025.

/s/ **Patricia L. Ganci**

Patricia L. Ganci, RMR, CRR